McKEOWN, Circuit Judge,
Dissenting:
I respectfully dissent. I join the majority’s conclusion in § III A that trial counsel was ineffective because he failed to investigate and present sufficient mitigation evidence. I disagree with the majority that Detrich was prejudiced by this failure and that the state court made an unreasonable factual determination. In my view, this case should be analyzed under the legal prong of the Antiterrorism and Effective Death Penalty Act (“AEDPA”), 28 U.S.C. § 2254(d)(1), rather than § 2254(d)(2), the factual prong. Either way, Detrich cannot overcome the prejudice bar in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). And, even if Detrich could pass through § 2254(d)’s strict requirements, and we were permitted to consider the expansive new evidence, he nonetheless fails to establish prejudice.
Detrich’s appeal focuses on the state post-conviction court’s alleged under-weighing of the mitigation evidence that was before that court. This opportunity for another review has caused me to reevaluate our prior conclusion. Upon reconsideration of the facts and in the face of recent Supreme Court decisions, I conclude that the state post-conviction court’s prejudice evaluation was not contrary to established federal law. The court appropriately concluded that Detrich could not overcome the aggravating circumstance through his claims of impulsivity, drug and alcohol abuse, and a dysfunctional childhood. Although his mitigation evidence was presented to the state court, now he wants a “do over” with more extensive psychological and familial evidence. Though in no way do I discount the problems Detrich experienced, they are insufficient in the face of an extraordinarily cruel and heinous murder to establish a reasonable probability that the outcome would have been different had counsel effectively represented Detrich.
The Supreme Court’s recent decisions in Cullen v. Pinholster, —— U.S. -, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), and Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), both decided after our initial opinion was issued, provide the framework for our analysis. With respect to new evidence and evidentiary hearings in federal habeas petitions challenging state court convictions, Pinholster dramatically changed the landscape. *993 The central premise of Pinholster is that our review of Detrich’s claims under § 2254(d) is circumscribed by the state court record — review “is limited to the record that was before the state court that adjudicated the claim on the merits.” 131 S.Ct. at 1398; see also id. at 1413 (Sotomayor, J., dissenting) (“New evidence adduced at a federal evidentiary hearing is now irrelevant to determining whether a petitioner has satisfied § 2254(d)(1).”). Since Pinholster, courts have grappled with defining the circumstances in which new evidence may be considered. For example, our court reviewed post -Pinholster the admissibility of new evidence that was previously unavailable, such as when prosecutors withhold vital information in violation of their obligations under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See, e.g., Gonzalez v. Wong, 667 F.3d 965 (9th Cir.2011) (remanding petitioner’s Brady claim to the district court with instructions to stay the proceedings so that petitioner could return to state court because, despite petitioner’s diligence, some exculpatory evidence was not turned over until the federal habeas proceeding).
To be sure, the Supreme Court did not completely close the door on new evidence or evidentiary hearings under 28 U.S.C. § 2254(e)(2). As I wrote in Stokley v. Ryan: 659 F.3d 802, 808 (9th Cir.2011). See also Pinholster, 131 S.Ct. at 1411 n. 20 (noting that because Pinholster did not meet § 2254(d)(1) on the state court record alone, “we need not decide whether § 2254(e)(2) prohibited the District Court from holding the evidentiary hearing or whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied.”)
Pinholster leaves open the question of how to distinguish between a claim that was exhausted in state court and a claim that is transformed by new evidence into a different and novel contention presented for the first time in federal court. The Court in Pinholster also had no occasion to speak to the role that new evidence plays in federal habeas proceedings on those rare occasions when an evidentiary hearing is proper.
Regardless of the fissures left open after Pinholster, the Court made abundantly clear that our review under § 2254(d) is limited to the record before the state court. On the state court record, Detrich fails to show that he can surmount the barriers imposed by § 2254(d).
Recognizing that Pinholster requires initial review on the basis of the state court record alone, the majority concludes, under § 2254(d)(2), that the state court’s prejudice analysis rested on an unreasonable determination of the facts. Maj. Op. at 979-81. With that conclusion on the table, the majority then goes on to incorporate into its analysis the “volumes” of new evidence offered in the federal habeas proceeding.
I part ways with the majority at this initial juncture. Unlike the majority, I view Detrich’s claim as most properly falling within the purview of § 2254(d)(1), and, even if it is viewed as a factual misstep under § 2254(d)(2), Detrich cannot satisfy the prejudice standard. Although restricting itself to the state court record in its analysis of Detrich’s claims under § 2254(d), the majority inordinately focuses on Dr. Briggs’s neuropsychological report. Detrich’s appellate counsel obtained funding for the report and, before the state court, advanced the argument that Detrich’s impulsivity, coupled with his abusive childhood and substance abuse, were mitigating factors that should have *994 changed the trial judge’s mind on sentencing. But the post-conviction court, which was the same judge as the trial court, flatly rejected this argument: “[T]here is no reasonable probability that this testimony [regarding neuropsychological functioning] would have compelled this Court to impose a sentence less than death.” The additional evidence of a dysfunctional childhood was deemed cumulative.
In the end, this case mirrors Pinholster: As the Court wrote, “There is no reasonable probability that the additional evidence Pinholster presented in his state habeas proceedings would have changed the jury’s verdict. The ‘new’ evidence largely duplicated the mitigation evidence at trial.” Pinholster, 131 S.Ct. at 1409. Substitute Detrich for Pinholster and the result is the same. This conclusion is compelled by the Court’s opinion in Harrington. As to prejudice, the Court explained: “In assessing prejudice under Strickland, the question is not whether a court can be certain counsel’s performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently.” Harrington, 131 S.Ct. at 791. The Court went on to reiterate its clear standard, explaining that “[i]nstead, Strickland asks whether it is ‘reasonably likely’ the result would have been different.” Id. at 792 (citation omitted). Finally, because Detrich cannot overcome the § 2254(d) bar, the circumstances of this case do not permit the extensive new evidence taken into account by the majority.
A. No Unreasonable Application of Clearly Established Federal Law Under § 2254(d)(1)
Detrich has consistently argued that he is entitled to habeas relief because the state post-conviction court unreasonably applied the Strickland standard. Given the fact-intensive nature of the Strickland inquiry, it is understandable that the majority desires to fit its analysis under § 2254(d)(2) — the “unreasonable determination of the facts” prong of the AEDPA. On reflection and careful review of the record, however, I conclude that this case simply does not present the situation where the state court’s factual finding was unsupported by sufficient evidence, where the process employed by the state court was defective, or where the state court made no factual finding at all. Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.2004). Rather, the post-conviction court’s decision turns on the “application of’ the prejudice prong of Strickland, which constitutes “clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
The majority’s ultimate conclusion rests on its disagreement with the state court’s determination that Detrich was not prejudiced by his counsel’s ineffective assistance. To prevail on his ineffective assistance of counsel claim, Detrich must show both (1) “that counsel’s performance was deficient,” and (2) “that the deficient performance prejudiced the defense.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Under the prejudice analysis, there must be “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. Further, our review is “doubly deferential” under the AEDPA, and Detrich must show that it was necessarily unreasonable for the state court to conclude that: (1) he had not overcome the strong presumption of competence; and (2) he had failed to undermine confidence in the outcome of the state court proceeding. Pinholster, 131 S.Ct. at 1403 (citation omitted). Detrich makes no such showing.
*995 Our debate centers on the second prong of Strickland. Ultimately, I read the majority’s position to be that, given the information before the state post-conviction court, the majority would have reached a different outcome. But that is not the standard imposed by the AEDPA. Even if we disagree with the state court and might have reached a different conclusion as an initial matter, the state post-conviction court’s conclusion that Detrich did not establish prejudice was not an unreasonable application of Strickland. See Harrington, 131 S.Ct. at 786 (reiterating that “even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable”).
In assessing the prejudice to Detrich, we reweigh the evidence in aggravation against the totality of the available mitigation evidence. Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The sole aggravating circumstance of the murder — that it was “especially heinous, cruel, or depraved” under Arizona Revised Statute § 13-703(F)(6) — is entitled to significant weight. Explaining its conclusion that the murder was especially cruel, the state court noted that Souter, the victim, suffered a slit throat and forty knife injuries to her face, hands, chest, neck, abdomen and thigh, some of which were defensive. State v. Detrich, 188 Ariz. 57, 932 P.2d 1328, 1338-39 (1997). She also suffered blunt force trauma injuries, including bruises on her nose, jaw, and scalp, and scraping and tearing of the lining of her mouth. Id. at 1339. That Souter was conscious during some of the attack was evidenced by her gurgling attempts to respond to Detrich’s questions. Id. at 1338-39. This evidence demonstrated that Souter must have suffered excruciating pain before she died. The court also noted that Souter suffered mentally when she was held at knifepoint and threatened with sexual assault. Id. at 1339.
The state court further found that the crime was “especially heinous or depraved” because of the gratuitous violence beyond that necessary to cause death; because Detrich relished in the murder, asking Charlton if he “wantfed] a shot” at the dead body; because the killing was senseless; and because the victim was helpless. Id. at 1339. Despite the majority’s conclusion to the contrary, nothing before the state post-conviction court (including Dr. Briggs’s report) alters the significance of these facts. Maj. Op. at 984-86.
The state trial court gave full credence to Detrich’s substance abuse problems and dysfunctional childhood. As mitigating factors, the state court found, under Arizona Revised Statute § 13-703(G)(1), that Detrich’s capacity to appreciate the wrongfulness of his conduct or conform it to the law was significantly impaired, based on testimony that he was drinking heavily and possibly using cocaine at the time of the crime. The court also found the following non-statutory mitigation: physically and mentally abusive background; remorse; and history of alcohol and drug abuse.
According to Pinholster, we look only to the state court record, which includes the following evidence of Detrich’s mental health: (1) the 1985 evaluations, one by a state psychologist and the other by a psychiatrist, that were attached to the presentence report; (2) a 1991 court psychologist’s evaluation that the state provided to the trial court; and (3) Dr. Briggs’s report on neuropsychological functioning, which Detrich’s habeas counsel presented in the state post-conviction proceeding. The 1985 psychological report noted Detrich’s impulsivity, immaturity, poor judgment, and low tolerance for frustration. Similarly, the 1985 psychiatric evaluation found Detrich’s judgment to be grossly intact “with occasional impulsive responses,” and *996 remarked that Detrich appeared to become frustrated quickly. Despite these observations, both reports stated that Detrich did not suffer from a thought disorder or from delusional thinking. The 1991 report confirms these conclusions, noting that Detrich did not exhibit any symptoms of a major mental disorder or any other significant psychiatric disturbance and his thought processes were logical and coherent. However, unlike the 1985 reports, the 1991 evaluation did not reflect a high tendency toward impulsivity. Tellingly, together these reports noted that Detrich did not have a history of prior felony convictions or a known significant history of aggressive behavior. As the district court aptly noted, Detrich’s lack of a violent history before the murder undercuts his argument that he could not conform his conduct to the law.
The addition of Dr. Briggs’s report did not alter the significance of the other psychological evidence. In line with the other doctors’ observations, Dr. Briggs noted Detrieh’s impulsivity in several areas of the testing session. His examination also revealed no pattern of cognitive dysfunction and that Detrich’s neurological functioning was in the normal range, which was a “recovered picture from the reported head traumas and toxic abuse.” Dr. Briggs acknowledged that Detrich’s appearance of greater overall impairment of function was “likely an interaction between his emotional state and his mild neuropsychological deficits.” He ultimately concluded that “decision-making, especially when compromised by alcohol, was not based on any consequence-driven thought process, but rather a learned behavior that bypassed right and wrong.”
The majority asserts that “Dr. Briggs’s report not only offers an expert explanation of the causal link between Detrich’s horrific childhood and his crime, but also indicates that his neuropsychological deficits contributed to the crime.” Maj. Op. at 985. This reading of the report is the majority’s gloss on Dr. Briggs’s explanation, not what the report actually says. Although Dr. Briggs acknowledges that Detrich developed a mindset “in which instinct took over and reason could not be accessed,” Dr. Briggs makes no specific findings as to Detrich’s mindset at the time of Souter’s murder. More importantly, the Briggs report does not provide a reasonable probability that a factfinder would make such a connection. While Dr. Briggs’s report may shed some additional light on Detrich’s abusive background and mental health and provide generalized statements about Detrich’s impulsive or instinctive behaviors, it does not establish that Detrich could not conform his behavior to the law when he murdered Souter nearly ten years earlier. See State v. Johnson, 212 Ariz. 425, 133 P.3d 735, 750 (2006) (“[T]he weight to be given [to] mental impairment should be proportional to a defendant’s ability to conform or appreciate the wrongfulness of his conduct.” (alteration in original) (internal quotation marks and citation omitted)).
Whatever the specific impairments that Detrich may suffer, I agree with the district court’s determination that they are “entitled to only minimal mitigating weight because [Detrich] has no history of violence or evidence that the impairments cause aggression, the crime was not impulsive, and the experts agree that [Detrich] is largely cognitively normal with at least an average IQ.” Ultimately, as the district court concluded, Detrich “has not proven that he suffers from a mental impairment which is a ‘major contributing cause’ to his conduct at the time of the crime.”
The additional letters from Detrich’s family presented in the state habeas pro *997 ceedings also do not alter the mitigation calculus. Although these letters recount a truly sad story and more fully develop Detrich’s abusive childhood and his history of drug and alcohol abuse, this evidence was cumulative and known by the trial court at sentencing. More than one of the mental health evaluations before the state trial court noted the considerable abuse and neglect he suffered, specifically chronicling that Detrich had been chained up, pushed down stairs, held under water in the bathtub, and encouraged to drink alcohol and use drugs as early as eight or nine years old. The sentencing judge specifically accounted for the abuse Detrich suffered and found both statutory and non-statutory mitigating circumstances.
None of the additional documentation made any connection between Detrich’s inability to conform his conduct to the requirements of the law at the time of the murder and his troubled childhood, the alcohol and drug abuse, the accidents he suffered, and his psychological or neurological challenges. See State v. Stanley, 167 Ariz. 519, 809 P.2d 944 (1991) (holding that drug and alcohol abuse could not be considered a mitigating factor where the defendant did not prove by a preponderance of the evidence that his drug and alcohol problem significantly impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law). Looking at the evidence before the state court, as Pinholster requires us to do, it was not unreasonable for the state post-conviction court to hold there was no reasonable probability that, if Detrich’s counsel had fully investigated and presented the available mitigation evidence, Detrich would not have been sentenced to death. This conclusion was not an unreasonable application of federal law.
B. No Unreasonable Determination of Fact Under § 2254(d)(2)
Rather than analyzing the appeal under § 2254(d)(1), the majority rests its decision on a purported unreasonable determination of fact — i.e., that any defect in the state court determination is more properly cognizable under § 2254(d)(2). I disagree. Nonetheless, were this case more appropriately analyzed under § 2254(d)(2), the state court did not make an unreasonable determination of fact. And finally, even if that were so, on a de novo review, Detrich still falls short on the prejudice requirement.
To begin, as we emphasized in Taylor, the “unreasonable determination” standard of § 2254(d)(2) is a “daunting standard— one that will be satisfied in relatively few cases.” 366 F.3d at 1000. It would, of course, be unreasonable for the state court to fail to account for, or even acknowledge, Dr. Briggs’s report en toto. “A rational fact-finder might discount [highly probative evidence] or, conceivably, find it incredible, but no rational fact-finder would simply ignore it.” Id. at 1006. Had the state court not considered the Briggs report, it would have inappropriately diminished the weight of the psychological evidence, which would reveal a major fault in that court’s fact-finding process. Or, had the state court mischaracterized the report or fatally misinterpreted it, likewise it would have been unreasonable. But that is not what happened here.
At the request of Detrich’s counsel, Dr. Briggs provided an extensive, seven-page single-spaced report covering everything from “General Neuropsychological Functioning” to “Symptomatic Patterns” and “Diagnostic Impressions and Neurological Implications.” In the face of the extensive report, the majority concludes that because the state court did not explicitly cite to or acknowledge statements in Dr. *998 Briggs’s report that could be construed as favorable to Detrich and failed to highlight the finding that Detrich had developed a “mindset” that “bypassed right or wrong” and “in which instinct took over and reason could not be accessed,” that court made an unreasonable determination of fact. Such a characterization does not give the state court’s determination the deference to which it is entitled. See Taylor, 366 F.3d at 999-1000 (“What the ‘unreasonable determination’ clause teaches us is that, in conducting this kind of intrinsic review of a state court’s processes, we must be particularly deferential to our state-court colleagues.”) The state court’s determination must stand unless we are satisfied that “any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Id. at 1000.
I don’t want to say the majority is nitpicking, but it certainly could be characterized that way. At a minimum, it is fair to say that the majority opinion does cherry pick. See e.g., Wetzel v. Lambert, — U.S. --, 132 S.Ct. 1195, 1198-99, 182 L.Ed.2d 35 (2012) (vacating and remanding grant of habeas where circuit court, in finding the state court’s determination “patently unreasonable,” overlooked some determinations of the state court and “focused solely” on one portion of the state court decision). As for the “recovered picture,” Dr. Briggs actually said, “This is a recovered picture from the reported head traumas and toxic abuse.” Of course, the head trauma took place long before both the crime and the trial, and the post-conviction court acknowledged the alcohol abuse and credited it as a mitigating factor. The state habeas court’s reference that “[Detrich’s] neuropsychological functioning was normal,” is hardly a misstatement since that is what Dr. Briggs found. The court did not attempt to link that finding with the time of the crime. Overall, the court simply found that “Dr. Briggs’[s] report was not significantly different” from the other reports considered at trial. And it was not, although it added more texture and detail.
The district court reached the same conclusion; it is worth quoting the entire analysis:
Petitioner alleges that the PCR court’s decision was unreasonable because it ignored evidence in concluding that Dr. Briggs’s report was not “significantly different” from the report considered at sentencing. The significant difference that Petitioner points to is Dr. Briggs’s conclusion that Petitioner has neuropsychological deficits. Dr. Briggs stated in his report that Petitioner had a few impaired performances on his testing “which do not appear to have major clinical significance.” (Pet. Ex. 22 at 2, 6.) While Dr. Briggs noted that Petitioner’s functioning was recovered since the time of his head injuries and substance abuse, he concluded that Petitioner’s neuropsychological function was normal and that there was no cognitive dysfunction. (Id. at 6, 3.) He also stated that Petitioner’s psychological and emotional profile was the most significant factor in his behavior. (Id. at 6.) Similarly, Dr. Boyer concluded in 1991 that Petitioner’s cognitive functioning was grossly intact, that he was of at least average intelligence, that he did not have any major mental disorder or psychiatric disturbance, but that his ability to relate emotionally was impaired and he had antisocial attitudes. (Pet. Ex. 58 at 3, 7, 9.) Dr. Briggs’s report is in conformance with all of these findings. In light of the fact that Dr. Briggs indicated that Petitioner’s impaired performances were not of clinical significance and emphasized other *999 issues as the major contributing forces in his behavior, the PCR court’s conclusion that his report was not “significantly different” than Dr. Boyer’s is not objectively unreasonable.
Detrich v. Schriro, No. CV-03-229-TUC-DCB, 2007 WL 4024551, at *22 (D.Ariz. Nov. 15, 2007).
Here, the state court’s reference to the Briggs report is a question of reasonable interpretation and nuance, which does not meet § 2254(d)(2)’s strict standards. Such a formulation not only does not reasonably lead us to “merely doubt whether [the state court’s fact-finding] process operated properly,” Taylor, 366 F.3d at 1000, but it is also insufficient to support the majority’s conclusion that the state court unreasonably determined the facts. The majority’s efforts to reconstitute Dr. Briggs’s findings do not change this conclusion. Extracting isolated morsels from Dr. Briggs’s report, the majority leaves much of the context behind. Though Detrich’s scored a 25 on the General Neuropsychological Deficit Scale, a score of 26-40 would only represent mild impairment. This score is in line with Dr. Briggs’s observations that Detrich suffered from “mild neuropsychological deficits.” Even acknowledging that his assessment represented a “recovered picture,” Dr. Briggs concluded that “Detrich’s brain is intact and he has good abilities when he accesses it.” Dr. Briggs’s comments regarding Detrich’s emotional status as the “most significant factor” relate to Detrich’s presentation at the time of evaluation and provide minimal insight regarding Detrich’s mental state at the time of the crime. The report is hardly as direct and conclusive as the majority would like to believe.
Giving in to such post hoc interpretation and reconfiguration of the facts is not in accord with the AEDPA. The state court stated that it considered the Briggs report and we should accept that representation at face value. That the court did not quote the entire seven-page report is hardly an AEDPA sin. In fact, Dr. Briggs made multiple findings, including those related to impulsivity, substance abuse, dysfunctional childhood, and severe abuse that support the court’s conclusion that, at bottom, the report was “not significantly different” than the earlier reports. The added detail did not change the inevitable conclusion that the mitigation evidence was simply insufficient to overcome the aggravation factor in the view of the state habeas court. For example, the Briggs report acknowledged multiple deficiencies, such as: “His basic problem seems to be that he is impulsive and insists on having his own way regardless of the law or the feelings of other people”; “Residual effects from earlier peripheral hand [sic head] injuries are seen to contribute to some of the impaired performances”; and “[I]t is believe[d] that the mindset was developed in which instinct took over and reason could not be accessed.” But it was not necessary for the court to reference or quote each of those findings to reach its conclusion nor should we impose such a burden. Would the majority reach the same conclusion had the state court simply attached or reproduced the language of the report in full? I trust that form should not trump substance. In sum, I conclude that the state court did not make an unreasonable determination of fact.
Whether the majority’s conclusion as to an unreasonable factual finding is correct does not change the result. It simply triggers a de novo review that requires us to consider all of the psychological reports, including that of Dr. Briggs, along with the other evidence of mitigation. Reviewing the state record de novo, I agree with the state post-conviction court: in light of the especially heinous, cruel and depraved *1000 nature of the crime, coupled with the mitigation evidence — which was not overwhelming but ranged from childhood abuse, alcoholism, neurological deficit, remorse, and lack of a criminal record— there was no reasonable probability that the new evidence presented to the state post-conviction court “would have compelled [the trial court] to impose a sentence less than death.”
C. Role of New Evidence
Post-trial, Detrich developed the record through Dr. Briggs plus additional, though essentially duplicative, evidence from his family. Now, in this habeas proceeding, he not only wants a “redo” and brush up on Dr. Briggs’s testimony, he wants to bring in a host of other experts on a claim that he already presented to the state post-conviction court. In light of my analysis as to Detrich’s inability to pass through the § 2254(d) bar, I would not proceed with new evidence.
But even with the benefit of the new evidence that the district court permitted before having the benefit of Pinholster, the district court concluded after extensive analysis that Detrich did not “prove[ ] that he suffers from a mental impairment which [was] a ‘major contributing cause’ to his conduct at the time of the crime,” that he “ha[d] not discovered significant new or more weighty mitigation than was considered by the sentencing judge,” and that “[e]ven if Petitioner is correct that no deference is owed under the AEDPA, the Court finds that Petitioner has failed to demonstrate prejudice under Strickland.” I agree. Ultimately, Detrich does not present a new claim, previously undiscoverable evidence, suppressed evidence, evidence ignored by the state court, or a myriad of other circumstances that could qualitatively strengthen his assertions of prejudice. His piling on of new evidence does not alter either the weight or the conclusions drawn from the state court record.
I respectfully dissent.