OPINION
BARRY, Circuit Judge.

Introduction

In 1984, James Lambert was convicted in the Philadelphia Court of Common Pleas of committing two murders in the course of a robbery, and was sentenced to death. At trial, the Commonwealth’s case against Lambert was based almost entirely on the testimony of Bernard Jackson, who had participated in the robbery but had agreed to testify against Lambert and one Bruce Reese. In 2002, Lambert filed a petition under Pennsylvania’s Post-Conviction Relief Act (PCRA) alleging that, inter alia, the Commonwealth had failed *80 to disclose a Police Activity Sheet (or “the report”) indicating that, prior to trial, Jackson had identified not Lambert, but another man, Lawrence Woodlock, as a participant in the robbery and shooting. Lambert claimed that the Commonwealth’s failure to disclose the report violated his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The PCRA court disagreed, and denied relief. On appeal, the Pennsylvania Supreme Court affirmed, holding that the report was not material under Brady because Jackson had been so extensively impeached at trial that any additional impeachment would have been merely “cumulative.” Lambert then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania challenging the state court’s adjudication of this and other claims. In 2007, the District Court denied relief on all claims.
On February 7, 2011, we reversed and granted the writ. Lambert v. Beard, 633 F.3d 126 (3d Cir.2011) (Lambert VI). We concluded that the Pennsylvania Supreme Court’s determination that the Police Activity Sheet was not material under Brady because it was merely cumulative to other impeachment evidence “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1). The Commonwealth subsequently petitioned the Supreme Court for certiorari.
On February 21, 2012, the Supreme Court issued a per curiam decision, over a three-justice dissent, holding that we had overlooked the state court’s alternative basis for denying Lambert’s Brady claim— that “the reference to Woodlock [in the Police Activity Sheet] was ambiguous and any connection to the Prince’s Lounge robbery speculative.” Wetzel v. Lambert, — U.S. -, 132 S.Ct. 1195, 1199, 182 L.Ed.2d 35 (2012). Accordingly, the Supreme Court vacated our judgment and remanded the matter for consideration of whether this alternative ground supporting the state court’s decision was reasonable. The parties have submitted supplemental briefs addressing this issue, and we have heard oral argument.
After careful review, we again conclude that Lambert is entitled to habeas relief. Accordingly, we will vacate the judgment of the District Court.
I. Factual and Procedural Background
We previously recounted the factual and procedural background relevant to Lambert’s Brady claim as follows:
At approximately 9:00 on the evening of September 23, 1982, the robbery of Prince’s Lounge went bad, and two patrons were shot to death. The Philadelphia Police Department commenced an investigation, but the perpetrators could not be identified, although two of the three barmaids working that night gave general descriptions of each of the two perpetrators. Not long after the murders, however, an anonymous tip was received by the Department identifying Bernard Jackson and “Touche” (later identified as Reese, Jackson’s brother-in-law) as the men in the bar that night. Each barmaid was subsequently presented, for the first time, with a photo array that included Jackson’s photo. Sarah Clark identified Jackson as the man who was standing at the top of the stairs in the bar and ordered her to place the money in a bag just before she heard two gunshots from the rear of the bar, the shots that killed the two patrons. Marie Green was 85 to 90 percent sure that the man at the top of the *81 stairs was Jackson. Janet Ryan, the third barmaid, was working at the rear of the bar and dropped down and ran to the ladies room when the shooter pointed a gun in her face.
Jackson, who by then was in custody on another charge, learned that he had been identified by at least one of the barmaids and told the police about the Prince’s Lounge robbery and that Reese and “another dude,” whose name he could not recall, had done it. His story, at least initially, went as follows. He and Reese met the “other dude” (whom he much later identified as Lambert) for the first time less than an hour before the three of them decided to rob a bar. After casing, and rejecting, one bar, Jackson, who admitted to having previously committed at least thirteen armed robberies of bars, made the decision to rob the Prince’s Lounge after ascertaining that a female friend of his was not working that night. Jackson claimed to have waited in the getaway car while Lambert and Reese entered the bar and went upstairs, each armed with a handgun provided by Reese — Lambert was carrying the .32 and Reese the .38, which, as it turned out, was the murder weapon. Jackson claimed not to have known what happened in the bar aside from what he was told by Reese and Lambert when they returned to the car and fled the scene with Jackson at the wheel.
Lambert VI, 633 F.3d at 130.
Based on Jackson’s statements to police, Lambert and Reese were arrested and charged with murder, criminal conspiracy, and possession of an instrument of crime. At trial, the Commonwealth’s case against Lambert rested almost entirely on Jackson’s testimony, which he gave in exchange for an open guilty plea to third-degree murder, robbery, conspiracy, and several other crimes unrelated to the Prince’s Lounge robbery and shooting. Jackson was impeached at trial with multiple inconsistencies in his story. We previously explained these inconsistencies as follows:
Jackson’s statements of October 14, 1982, October 22, 1982, January 14, 1983, and February 6, 1983 were devastatingly inconsistent with each other and with his story at trial. He initially decided to give the police only “some of the truth” and told the police that Reese had admitted to shooting two people; then he told the police that Reese said Lambert was the shooter and that Reese was ordering the barmaid to give him the money; then he told the police that although he had previously said that Lambert had done it, that wasn’t true— he was “feeding them a story” when he said that Lambert said he had shot two people and “that was a lie, too.” Now, at trial, he said, he was going to tell the truth. It was Reese, not Lambert, who said that he shot two people, but that wasn’t true either because what Reese really said was that “I think we killed a couple of guys in there,” not that he did. Indeed, Jackson was finally forced to admit that three months after the first of his lengthy statements to the police, he was still giving them different versions of what had happened. Still, breathtakingly, at the very end of his testimony, with his credibility hanging, at best, by a thread, and conceding that he was testifying to avoid a death sentence, Jackson somewhat proudly announced that although he had “switched what [Lambert and Reese] did interchangeably,” he always said that Lambert and Reese were the two men involved — they were “the only two people” he supplied to the police.
Id. at 131 (citations to record omitted).
But, unbeknownst to either the defense or the jury at the time, Jackson had in fact *82 supplied police with another perpetrator. Several years after the trial, Lambert discovered several documents that had not been disclosed, including the Police Activity Sheet at issue here, which is dated October 25, 1982. The Police Activity Sheet notes the file number of the investigation into the Prince’s Lounge homicide, the names of the investigators, and the names of the murder victims. The report then sets forth the following notations:
A photo display was shown to the below listed person[s.] Photo display contained a Lawrence WOODLOCK 27 N/M res. 5333 Walnut St. PPN # 477095. Mr. WOODLOCK is named as co-defendant by Bernard JACKSON. No identification was made.
Sarah CLARK 5511 Saybrook Ave. Marie GREEN 5227 Pine St.[1] A survey was made of the area 53RD. & Walnut St. to found [sic] Lawrence WOODLOCK Neg. results.
(App. 3334.)
Lambert presented the Police Activity Sheet to the PCRA court and argued that the Commonwealth’s failure to disclose it violated his due process rights under Brady. The PCRA court denied relief on the ground that the report was not material. The court explained that “Jackson was comprehensively impeached by the defendant and co-defendant Reese at trial[,]” and, “[d]espite being impeached on prior inconsistencies and lies to police, the jury determined Jackson to be credible.” (A228.) Therefore, according to the PCRA court, “[i]n light of the record as a whole, it is not reasonable to believe that Jackson’s further inconsistency found only in a police activity sheet and not in any of his statements to police would have caused the jury to discredit him.” (Id.)
Upon review, the Pennsylvania Supreme Court agreed, explaining that:
The PCRA court concluded that this document was not material as it did not create a reasonable probability that the result of the proceeding would have been different had it been disclosed. We agree. Appellant’s claim that Jackson’s reference to Woodlock automatically means that someone other than himself committed the shootings and robbery is purely speculative at best. The Commonwealth accurately notes that the police must not have had reason to consider Woodlock a potential codefendant in this case as his name is not mentioned anywhere else in the police investigation files.... Moreover, this document would not have materially furthered the impeachment of Jackson at trial as he was already extensively impeached by both appellant and Reese. Indeed, each codefendant cross-examined Jackson on the following: every inconsistency in his four police statements; that he was testifying on behalf of the Commonwealth pursuant to a plea bargain; and that he had several open robbery charges still pending and his testimony was motivated by a desire to receive lenient sentences for those crimes. Any additional impeachment of Jackson arising from a police notation would have been cumulative. Accordingly, the Commonwealth did not violate Brady by not disclosing this police activity sheet as appellant has failed to show its materiality.
Commonwealth v. Lambert, 584 Pa. 461, 884 A.2d 848, 855-56 (2005) (Lambert III) (citation omitted).
*83 Lambert then challenged the state court’s adjudication of his Brady claim in a federal habeas petition. When the District Court considered the claim, it did not address the materiality of the October 25, 1982 Police Activity Sheet in particular, but instead considered it only as part of a group of documents that the Commonwealth had not disclosed, and determined that “[t]he various notations and statements which [Lambert] claims the Commonwealth should have disclosed are entirely ambiguous, and would have required the state courts to speculate to conclude they were favorable for Lambert and material to his guilt or punishment.” Lambert v. Beard, No. 02-9034, 2007 WL 2173390, at *10 (E.D.Pa. July 24, 2007) (Lambert IV). Accordingly, the District Court held that the Pennsylvania Supreme Court’s disposition of Lambert’s Brady claim was reasonable under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Id.
We disagreed and held that the state court’s adjudication of the claim resulted in a decision that involved an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1). In particular, we rejected the Pennsylvania Supreme Court’s determination that the Police Activity Sheet of October 25, 1982 was not material because it was merely cumulative to other evidence that was used to impeach Jackson at trial; our primary concern was that the state supreme court had concluded that Jackson “was so thoroughly impeached that, ipso facto, additional evidence could not have made a difference.” Lambert VI, 633 F.3d at 133. We wrote that it was “patently unreasonable” for the state court to “presume — without explanation — that whenever a witness is impeached in one manner, any other impeachment becomes immaterial,” id. at 134, especially given that in this case, the report would have opened an entirely new line of impeachment because the Commonwealth had relied heavily on Jackson’s insistence at trial that he had consistently named only Lambert and Reese as the perpetrators. Accordingly, we vacated the District Court’s judgment, remanded the matter, and directed the District Court to conditionally grant the petition for a writ of habeas corpus. We ordered the Commonwealth to retry Lambert or release him.
Thereafter, the Commonwealth filed a petition for writ of certiorari in the Supreme Court of the United States. The Supreme Court granted the petition and vacated our judgment on the ground that we had failed to properly defer to the state court’s adjudication of the Brady claim. Specifically, and while not taking issue with the determination we had made, the Supreme Court held that we had “overlooked the determination of the state courts that the notations [in the Police Activity Sheet] were, as the District Court put it, ‘not exculpatory or impeaching’ but instead entirely ambiguous.’ ”[2] Lambert VII, 132 S.Ct. at 1198 (citation omitted). Our review on remand is thus limited to considering whether, when taking into account this alternative ground, we still conclude that the Pennsylvania Supreme Court’s decision was unreasonable under AEDPA.
II. Jurisdiction and Standard of Review
The District Court had jurisdiction under 28 U.S.C. §§ 1331, 2241, and 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the *84 District Court did not conduct an evidentiary hearing, we exercise plenary review over its decision. See Simmons v. Beard, 590 F.3d 223, 231 (3d Cir.2009).
III. Discussion
A.
AEDPA sets the parameters for our review. Under AEDPA, we may grant habeas relief only if the adjudication of a claim in state court proceedings “(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [sjtate court proceeding.” 28 U.S.C. § 2254(d)(l)-(2).
Thus, § 2254(d) requires three distinct legal inquiries. See Harrington v. Richter, -U.S.-, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). “First, we must inquire whether the state court decision was ‘contrary to’ clearly established federal law, as determined by the Supreme Court of the United States; second, if it was not, we must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence.” Blystone v. Horn, 664 F.3d 397, 417 (3d Cir.2011) (quotation marks and citation omitted). “Third, we must ask whether the state court decision ‘was based on an unreasonable determination of the facts in light of the evidence presented’ to the state court.” Id. (quoting 28 U.S.C. § 2254(d)(2)).
While AEDPA imposes a highly deferential standard for evaluating state-court rulings, “deference does not imply abandonment or abdication of judicial review.” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). “The standard is demanding but not insatiable; ... deference does not by definition preclude relief.” Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (quotation and citation omitted).
B.
The Supreme Court of the United States has returned this case to us so that we may consider the state supreme court’s alternative basis for denying Lambert’s Brady claim — that is, its determination that the notations in the Police Activity Sheet were “not exculpatory or impeaching” but instead “entirely ambiguous.” Lambert VII, 132 S.Ct. at 1198 (internal quotation marks and citations omitted). According to the Supreme Court, the ambiguity at issue concerns not whether the report was prepared in connection with the investigation into the Prince’s Lounge crime, which was not disputed, but whether Jackson identified Woodlock in reference to that crime, or one of Jackson’s many others. We have carefully considered this alternative basis for the state court’s decision together with the rest of its opinion, and once again conclude that the state court’s decision to deny Lambert’s Brady claim was unreasonable. Specifically, we now hold that, insofar as the state court determined that the notations in the Police Activity Sheet were “not exculpatory or impeaching,” but instead “entirely ambiguous,” it rests on both an unreasonable application of federal law and an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1) and (2).[3]
*85 First, we hold that, insofar as the state court’s decision rests on a finding that the notations in the Police Activity Sheet are ambiguous because Jackson may have been identifying Woodlock in connection with a different robbery, it was “based on an unreasonable determination of the facts” under 28 U.S.C. § 2254(d)(2). The report is not ambiguous. The notations clearly refer to the Prince’s Lounge robbery and shooting, not some unrelated crime. The report sets forth the file number of this investigation, the investigators of this crime, the victims of these murders, and the witnesses of these events. It notes that witnesses were shown a photo display containing a photograph of Lawrence Woodlock. In this context, the only plausible explanation for the statement “Mr. Woodlock is named as co-defendant by Bernard Jackson” is that it too refers to this robbery and these murders and not some other crime.
The Commonwealth contends that the Police Activity Sheet, although created in connection with the Prince’s Lounge investigation, actually refers to a statement that Jackson made to police about one of his other robberies. The most obvious flaw in so contending is that if Jackson were naming Woodlock as an accomplice in one of his other robberies, then why did the police show Woodlock’s photo to eyewitnesses in this case? Although the Commonwealth speculates that the police were simply confirming that Woodlock had nothing to do with this case, the only explanation for the police having shown Wood-lock’s photo to the barmaids at the Prince’s Lounge that does not defy common sense, and surely, in Justice Breyer’s phrase, the “most natural” explanation, is that Jackson told the police that Woodlock was involved in that crime. Any conclusion to the contrary is “an unreasonable determination of the facts.” 28 U.S.C. § 2254(d)(2).
Our conclusion is consistent with our duty to defer to the state court’s decision. While AEDPA emphasizes deference to the state court’s findings, it has not eliminated federal habeas review, much less called upon us to deny relief. We have carefully examined the state court record and have found the court’s judgment regarding the meaning of the Police Activity Sheet to be objectively unreasonable. We have not, as our colleague in dissent suggests, “fail[ed] to grapple with the question of whether fairminded jurists could disagree” over the meaning of the report. Post, at 89 (opinion of Hardiman, J.) (citing Harrington, 131 S.Ct. at 786). Rather, we have exercised our power of review fully cognizant of the deference we owe to the state court, but, for the reasons noted above, have concluded that fairminded jurists simply could not conclude that the notations in the Police Activity Sheet are ambiguous.[4]
We further hold that, to the extent the state court determined that the Police Activity Sheet was not exculpatory or impeaching under Brady because it was ambiguous, such determination was an unrea *86 sonable application of clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)(1). It is well established that the state violates a defendant’s right to due process under Brady when it withholds evidence that is “favorable to the defense” (and material to the defendant’s guilt or punishment). Smith v. Cain, - U.S.-, 132 S.Ct. 627, 630, 181 L.Ed.2d 571 (2012). In describing evidence that falls within the Brady rule, the Supreme Court has made clear that impeachment evidence is “favorable to the defense” even if the jury might not affoi'd it significant weight. For example, in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the Court noted that because certain undisclosed evidence had “some value as exculpation and impeachment,” it should be considered in conjunction with the other undisclosed evidence in determining whether Brady’s materiality standard is satisfied. Id. at 450, 115 S.Ct. 1555 (emphasis added). The Court specifically rejected the state’s argument that the evidence was “neither impeachment nor exculpatory evidence” because the jury might not have substantially credited it; according to the Court, “[s]uch argument ... confuses the weight of the evidence with its favorable tendency.” Id. at 451, 115 S.Ct. 1555; see also United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (“[Impeachment] evidence is ‘evidence favorable to an accused,’ so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.”) (citation omitted).
There can be no doubt that the Police Activity Sheet had value as impeachment evidence and was favorable to Lambert. Had the report been made available to Lambert at trial, he could have used it to further undermine Jackson’s already shaky credibility and bolster his argument that Jackson had invented a third perpetrator in order to minimize his own level of involvement in the crime. Under these circumstances, the state court’s determination that the Police Activity Sheet did not satisfy the favorability prong of the Brady doctrine was unreasonable. See 28 U.S.C. § 2254(d)(1).
When this matter was last before us, we held that the state court’s determination that the undisclosed Police Activity Sheet did not satisfy Brady’s materiality standard was unreasonable as well. We rejected the state court’s reasoning that the report was not material because it was merely cumulative to other evidence that was used to impeach Jackson at trial. We explained that, had the defense introduced the report at trial, it would have opened an entirely new line of impeachment by undermining Jackson’s consistency in naming Reese and Lambert as the perpetrators; as we stated then, “the withheld information provided a unique basis on which to impeach — specifically, a basis that shredded Jackson’s credibility on the one point on which the jury could have inferred that he had any credibility.” Lambert VI, 633 F.3d at 134 n. 3; accord Smith, 132 S.Ct. at 630 (holding that the undisclosed statements of an eyewitness were “plainly material” where the eyewitness’s testimony was the only evidence linking the defendant to the crime and his undisclosed statement directly contradicted his trial testimony); Banks v. Dretke, 540 U.S. 668, 702, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (rejecting the state’s argument that no Brady violation had occurred because the witness was heavily impeached at trial, and thus that his status as a paid informant would have been merely cumulative impeachment evidence); Slutzker v. Johnson, 393 F.3d 373, 387 (3d Cir.2004) (holding that, although the defendant was able to impeach the prosecution in certain respects, the suppressed information was *87 material under Brady because there was a significant difference between the suppressed material and the information to which the defense had access).
We remain convinced that there is “a reasonable probability that, had the [Police Activity Sheet] been disclosed to the defense, the result of the proceeding would have been different.”[5] Bagley, 473 U.S. at 682, 105 S.Ct. 3375. In considering the materiality of suppressed evidence, the Supreme Court instructs us to ask “not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles, 514 U.S. at 434, 115 S.Ct. 1555. Given the weakness of the Commonwealth’s case against Lambert, and its emphasis at trial on Jackson’s consistency in naming Lambert and Reese as the perpetrators of the crime, we are surely not confident that, had the Commonwealth disclosed the Police Activity Sheet, the jury’s verdict would have been the same. The state court’s conclusion to the contrary was unreasonable.
IV. Conclusion
The judgment of the District Court is vacated, and this matter remanded. The District Court is directed to conditionally grant the petition for a writ of habeas corpus. The Commonwealth shall retry Lambert within 120 days. If it fails to do so, Lambert shall be released.

. As previously noted, Clark and Green were barmaids at the Prince’s Lounge who were present during the robbery and shooting,

. In remanding the case to us, the Supreme Court expressly noted that it was taking no position on the merits of this aspect of the decision of the Pennsylvania Supreme Court. Lambert VII, 132 S.Ct. at 1199.

. Before we address the cited state court ruling, we pause to note that we are not convinced that the state court made such a ruling. Like Justices Breyer, Ginsburg, and Kagan, we read the state court's decision differently than does the majority. See Lambert *85 VII, 132 S.Ct. at 1199 (BREYER, J„ dissenting). This concern notwithstanding, we, of course, accept for purposes of this remand that thef Pennsylvania Supreme Court made a determination that the notations contained in the Police Activity Sheet were not exculpatory or impeaching under Brady because they were ambiguous.

. As the dissent correctly notes, a determination that the state court unreasonably found the facts does not alone provide a basis for habeas relief. See Wilson v. Corcoran, - U.S. -, 131 S.Ct. 13, 16-17, 178 L.Ed.2d 276 (2010) (per curiam). Rather, a federal court must — as we proceed to do below — also find that the prisoner's custody violates federal law. See id. at 17.

. The dissent submits that our argument as to how the state court unreasonably applied Brady is "vitiated by the Supreme Court’s opinion....” Post, at 90 (opinion of Hardiman, J.). To the contrary, and as we previously noted, the Supreme Court took no issue with our prior opinion's holding.