NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-9005
_____

JAMES LAMBERT,
Appellant

v.

JEFFREY BEARD, COMMISSIONER, PENNSYLVANIA DEPARTMENT OF
CORRECTIONS; WILLIAM STRICKMAN, III, SUPERINTENDENT OF THE STATE
CORRECTIONAL INSTITUTION AT GREENE; THE DISTRICT ATTORNEY OF
THE COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA
_____

On Remand from the Supreme Court of the United States
(E.D. Pa. Civil Action No. 02-09034)
District Judge: Honorable Michael M. Baylson
_____

Argued April 17, 2013
_____

Before: HARDIMAN, STAPLETON and BARRY,
Circuit Judges
_____

(Opinion filed: September 20, 2013)

Stuart B. Lev, Esq. (*ARGUED*)
Leigh M. Skipper, Esq.
Keisha Hudson, Esq.
Timothy Kane, Esq.
Federal Community Defender Office
 for the Eastern District of Pennsylvania
Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West

Independence Square West
Philadelphia, PA   19106
        -AND-
Daniel A. Silverman, Esq.
Suite 1001
1429 Walnut Street
Philadelphia, PA  19102

Counsel for Appellant


Ronald Eisenberg, Esq. (*ARGUED*)
Thomas W. Dolgenos, Esq.
Edward F. McCann, Jr., Esq.
R. Seth Williams, Esq.
District Attorney's Office
Three South Penn Square
Philadelphia, PA  19107-3499

Counsel for Appellees

_____

OPINION
_____

BARRY, *Circuit Judge*

### *Introduction*

In 1984, James Lambert was convicted in the Philadelphia Court of Common

Pleas of committing two murders in the course of a robbery, and was sentenced to death.

At trial, the Commonwealth's case against Lambert was based almost entirely on the

testimony of Bernard Jackson, who had participated in the robbery but had agreed to

testify against Lambert and one Bruce Reese.  In 2002, Lambert filed a petition under

Pennsylvania's Post-Conviction Relief Act (PCRA) alleging that, *inter alia*, the

Commonwealth had failed to disclose a Police Activity Sheet (or "the report") indicating

2

that, prior to trial, Jackson had identified not Lambert, but another man, Lawrence Woodlock, as a participant in the robbery and shooting. Lambert claimed that the Commonwealth's failure to disclose the report violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). The PCRA court disagreed, and denied relief. On appeal, the Pennsylvania Supreme Court affirmed, holding that the report was not material under *Brady* because Jackson had been so extensively impeached at trial that any additional impeachment would have been merely "cumulative." Lambert then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania challenging the state court's adjudication of this and other claims. In 2007, the District Court denied relief on all claims.

On February 7, 2011, we reversed and granted the writ. *Lambert v. Beard*, 633 F.3d 126 (3d Cir. 2011) (*Lambert VI*). We concluded that the Pennsylvania Supreme Court's determination that the Police Activity Sheet was not material under *Brady* because it was merely cumulative to other impeachment evidence "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Commonwealth subsequently petitioned the Supreme Court for certiorari.

On February 21, 2012, the Supreme Court issued a per curiam decision, over a three-justice dissent, holding that we had overlooked the state court's alternative basis for denying Lambert's *Brady* claim—that "the reference to Woodlock [in the Police Activity

3

Sheet] was ambiguous and any connection to the Prince's Lounge robbery speculative."

*Wetzel v. Lambert*, -- U.S. --, 132 S. Ct. 1195, 1199 (2012).  Accordingly, the Supreme

Court vacated our judgment and remanded the matter for consideration of whether this

alternative ground supporting the state court's decision was reasonable.  The parties have

submitted supplemental briefs addressing this issue, and we have heard oral argument.

After careful review, we again conclude that Lambert is entitled to habeas relief.

Accordingly, we will vacate the judgment of the District Court.

## I.      *Factual and Procedural Background*

We previously recounted the factual and procedural background relevant to

Lambert's *Brady* claim as follows:

> At approximately 9:00 on the evening of September 23, 1982, the
> robbery of Prince's Lounge went bad, and two patrons were shot to death.
> The Philadelphia Police Department commenced an investigation, but the
> perpetrators could not be identified, although two of the three barmaids
> working that night gave general descriptions of each of the two
> perpetrators.  Not long after the murders, however, an anonymous tip was
> received by the Department identifying Bernard Jackson and "Touche"
> (later identified as Reese, Jackson's brother-in-law) as the men in the bar
> that night.  Each barmaid was subsequently presented, for the first time,
> with a photo array that included Jackson's photo.  Sarah Clark identified
> Jackson as the man who was standing at the top of the stairs in the bar and
> ordered her to place the money in a bag just before she heard two gunshots
> from the rear of the bar, the shots that killed the two patrons.  Marie Green
> was 85 to 90 percent sure that the man at the top of the stairs was Jackson.
> Janet Ryan, the third barmaid, was working at the rear of the bar and
> dropped down and ran to the ladies room when the shooter pointed a gun in
> her face.
>
> Jackson, who by then was in custody on another charge, learned that
> he had been identified by at least one of the barmaids and told the police
> about the Prince's Lounge robbery and that Reese and "another dude,"
> whose name he could not recall, had done it.  His story, at least initially,

went as follows. He and Reese met the "other dude" (whom he much later identified as Lambert) for the first time less than an hour before the three of them decided to rob a bar. After casing, and rejecting, one bar, Jackson, who admitted to having previously committed at least thirteen armed robberies of bars, made the decision to rob the Prince's Lounge after ascertaining that a female friend of his was not working that night. Jackson claimed to have waited in the getaway car while Lambert and Reese entered the bar and went upstairs, each armed with a handgun provided by Reese—Lambert was carrying the .32 and Reese the .38, which, as it turned out, was the murder weapon. Jackson claimed not to have known what happened in the bar aside from what he was told by Reese and Lambert when they returned to the car and fled the scene with Jackson at the wheel.

*Lambert VI*, 633 F.3d at 130.

Based on Jackson's statements to police, Lambert and Reese were arrested and charged with murder, criminal conspiracy, and possession of an instrument of crime. At trial, the Commonwealth's case against Lambert rested almost entirely on Jackson's testimony, which he gave in exchange for an open guilty plea to third-degree murder, robbery, conspiracy, and several other crimes unrelated to the Prince's Lounge robbery and shooting. Jackson was impeached at trial with multiple inconsistencies in his story. We previously explained these inconsistencies as follows:

Jackson's statements of October 14, 1982, October 22, 1982, January 14, 1983, and February 6, 1983 were devastatingly inconsistent with each other and with his story at trial. He initially decided to give the police only "some of the truth" and told the police that Reese had admitted to shooting two people; then he told the police that Reese said Lambert was the shooter and that Reese was ordering the barmaid to give him the money; then he told the police that although he had previously said that Lambert had done it, that wasn't true—he was "feeding them a story" when he said that Lambert said he had shot two people and "that was a lie, too." Now, at trial, he said, he was going to tell the truth. It was Reese, not Lambert, who said that he shot two people, but that wasn't true either because what Reese really said was that "I think we killed a couple of guys in there," not that he did. Indeed, Jackson was finally forced to admit that

5

three months after the first of his lengthy statements to the police, he was still giving them different versions of what had happened. Still, breathtakingly, at the very end of his testimony, with his credibility hanging, at best, by a thread, and conceding that he was testifying to avoid a death sentence, Jackson somewhat proudly announced that although he had "switched what [Lambert and Reese] did interchangeably," he always said that Lambert and Reese were the two men involved—they were "the only two people" he supplied to the police.

*Id.* at 131 (citations to record omitted).

But, unbeknownst to either the defense or the jury at the time, Jackson had in fact supplied police with another perpetrator. Several years after the trial, Lambert discovered several documents that had not been disclosed, including the Police Activity Sheet at issue here, which is dated October 25, 1982. The Police Activity Sheet notes the file number of the investigation into the Prince's Lounge homicide, the names of the investigators, and the names of the murder victims. The report then sets forth the following notations:

A photo display was shown to the below listed person[s.] Photo display contained a Lawrence WOODLOCK 27 N/M res. 5333 Walnut St. PPN # 477095. Mr. WOODLOCK is named as co-defendant by Bernard JACKSON. No identification was made.

Sarah CLARK 5511 Saybrook Ave. Marie GREEN 5227 Pine St.[1]

A survey was made of the area 53RD. & Walnut St. to found [sic] Lawrence WOODLOCK Neg. results.

(App. 3334.)

Lambert presented the Police Activity Sheet to the PCRA court and argued that

---

[1] As previously noted, Clark and Green were barmaids at the Prince's Lounge who were present during the robbery and shooting.

the Commonwealth's failure to disclose it violated his due process rights under *Brady*.

The PCRA court denied relief on the ground that the report was not material. The court

explained that "Jackson was comprehensively impeached by the defendant and co-

defendant Reese at trial[,]" and, "[d]espite being impeached on prior inconsistencies and

lies to police, the jury determined Jackson to be credible." (A228.) Therefore, according

to the PCRA court, "[i]n light of the record as a whole, it is not reasonable to believe that

Jackson's further inconsistency found only in a police activity sheet and not in any of his

statements to police would have caused the jury to discredit him." (*Id.*)

Upon review, the Pennsylvania Supreme Court agreed, explaining that:

> The PCRA court concluded that this document was not material as it
> did not create a reasonable probability that the result of the proceeding
> would have been different had it been disclosed. We agree. Appellant's
> claim that Jackson's reference to Woodlock automatically means that
> someone other than himself committed the shootings and robbery is purely
> speculative at best. The Commonwealth accurately notes that the police
> must not have had reason to consider Woodlock a potential codefendant in
> this case as his name is not mentioned anywhere else in the police
> investigation files. . . . Moreover, this document would not have materially
> furthered the impeachment of Jackson at trial as he was already extensively
> impeached by both appellant and Reese. Indeed, each codefendant cross-
> examined Jackson on the following: every inconsistency in his four police
> statements; that he was testifying on behalf of the Commonwealth pursuant
> to a plea bargain; and that he had several open robbery charges still pending
> and his testimony was motivated by a desire to receive lenient sentences for
> those crimes. Any additional impeachment of Jackson arising from a police
> notation would have been cumulative. Accordingly, the Commonwealth
> did not violate *Brady* by not disclosing this police activity sheet as
> appellant has failed to show its materiality.

*Commonwealth v. Lambert*, 884 A.2d 848, 855-56 (Pa. 2005) (*Lambert III*) (citation

omitted).

7

Lambert then challenged the state court's adjudication of his *Brady* claim in a federal habeas petition. When the District Court considered the claim, it did not address the materiality of the October 25, 1982 Police Activity Sheet in particular, but instead considered it only as part of a group of documents that the Commonwealth had not disclosed, and determined that "[t]he various notations and statements which [Lambert] claims the Commonwealth should have disclosed are entirely ambiguous, and would have required the state courts to speculate to conclude they were favorable for Lambert and material to his guilt or punishment." *Lambert v. Beard*, No. 02-9034, 2007 WL 2173390, at *10 (E.D. Pa. July 24, 2007) (*Lambert IV*). Accordingly, the District Court held that the Pennsylvania Supreme Court's disposition of Lambert's *Brady* claim was reasonable under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Id.*

We disagreed and held that the state court's adjudication of the claim resulted in a decision that involved an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). In particular, we rejected the Pennsylvania Supreme Court's determination that the Police Activity Sheet of October 25, 1982 was not material because it was merely cumulative to other evidence that was used to impeach Jackson at trial; our primary concern was that the state supreme court had concluded that Jackson "was so thoroughly impeached that, ipso facto, additional evidence could not have made a difference." *Lambert VI*, 633 F.3d at 133. We wrote that it was "patently unreasonable" for the state court to "presume—without explanation—that whenever a witness is impeached in one manner, any other impeachment becomes immaterial," *id.* at 134, especially given that in

8

this case, the report would have opened an entirely new line of impeachment because the Commonwealth had relied heavily on Jackson's insistence at trial that he had consistently named only Lambert and Reese as the perpetrators. Accordingly, we vacated the District Court's judgment, remanded the matter, and directed the District Court to conditionally grant the petition for a writ of habeas corpus. We ordered the Commonwealth to retry Lambert or release him.

Thereafter, the Commonwealth filed a petition for writ of certiorari in the Supreme Court of the United States. The Supreme Court granted the petition and vacated our judgment on the ground that we had failed to properly defer to the state court's adjudication of the *Brady* claim. Specifically, and while not taking issue with the determination we <u>had</u> made, the Supreme Court held that we had "overlooked the determination of the state courts that the notations [in the Police Activity Sheet] were, as the District Court put it, 'not exculpatory or impeaching' but instead 'entirely ambiguous.'"[2] *Lambert VII*, 132 S. Ct. at 1198 (citation omitted). Our review on remand is thus limited to considering whether, when taking into account this alternative ground, we still conclude that the Pennsylvania Supreme Court's decision was unreasonable under AEDPA.

## II.    *Jurisdiction and Standard of Review*

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 2241, and 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. Because the District

---

[2] In remanding the case to us, the Supreme Court expressly noted that it was taking no position on the merits of this aspect of the decision of the Pennsylvania Supreme Court.

Court did not conduct an evidentiary hearing, we exercise plenary review over its decision.  *See Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009).

### III.  *Discussion*

### A.

AEDPA sets the parameters for our review.  Under AEDPA, we may grant habeas relief only if the adjudication of a claim in state court proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

Thus, § 2254(d) requires three distinct legal inquiries.  *See Harrington v. Richter*, --- U.S. ----, 131 S. Ct. 770, 785 (2011).  "First, we must inquire whether the state court decision was 'contrary to' clearly established federal law, as determined by the Supreme Court of the United States; second, if it was not, we must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence."  *Blystone v. Horn*, 664 F.3d 397, 417 (3d Cir. 2011) (quotation marks and citation omitted).  "Third, we must ask whether the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented' to the state court."  *Id.* (quoting 28 U.S.C. § 2254(d)(2)).

---

*Lambert VII*, 132 S. Ct. at 1199.

While AEDPA imposes a highly deferential standard for evaluating state-court rulings, "deference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "The standard is demanding but not insatiable; . . . deference does not by definition preclude relief." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quotation and citation omitted).

**B.**

The Supreme Court of the United States has returned this case to us so that we may consider the state supreme court's alternative basis for denying Lambert's *Brady* claim—that is, its determination that the notations in the Police Activity Sheet were "not exculpatory or impeaching" but instead "entirely ambiguous." *Lambert VII*, 132 S. Ct. at 1198 (internal quotation marks and citations omitted). According to the Supreme Court, the ambiguity at issue concerns not whether the report was prepared in connection with the investigation into the Prince's Lounge crime, which was not disputed, but whether Jackson identified Woodlock in reference to that crime, or one of Jackson's many others. We have carefully considered this alternative basis for the state court's decision together with the rest of its opinion, and once again conclude that the state court's decision to deny Lambert's *Brady* claim was unreasonable. Specifically, we now hold that, insofar as the state court determined that the notations in the Police Activity Sheet were "not exculpatory or impeaching," but instead "entirely ambiguous," it rests on both an unreasonable application of federal law and an unreasonable determination of the facts in

11

light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2).[3]

First, we hold that, insofar as the state court's decision rests on a finding that the notations in the Police Activity Sheet are ambiguous because Jackson may have been identifying Woodlock in connection with a different robbery, it was "based on an unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2). The report is not ambiguous. The notations clearly refer to the Prince's Lounge robbery and shooting, not some unrelated crime. The report sets forth the file number of this investigation, the investigators of this crime, the victims of these murders, and the witnesses of these events. It notes that witnesses were shown a photo display containing a photograph of Lawrence Woodlock. In this context, the only plausible explanation for the statement "Mr. Woodlock is named as co-defendant by Bernard Jackson" is that it too refers to this robbery and these murders and not some other crime.

The Commonwealth contends that the Police Activity Sheet, although created in connection with the Prince's Lounge investigation, actually refers to a statement that Jackson made to police about one of his other robberies. The most obvious flaw in so contending is that if Jackson were naming Woodlock as an accomplice in one of his other robberies, then why did the police show Woodlock's photo to eyewitnesses in *this* case?

---

[3] Before we address the cited state court ruling, we pause to note that we are not convinced that the state court made such a ruling. Like Justices Breyer, Ginsburg, and Kagan, we read the state court's decision differently than does the majority. *See Lambert VII*, 132 S. Ct. at 1199 (BREYER, J., dissenting). This concern notwithstanding, we, of course, accept for purposes of this remand that the Pennsylvania Supreme Court made a determination that the notations contained in the Police Activity Sheet were not exculpatory or impeaching under *Brady* because they were ambiguous.

12

Although the Commonwealth speculates that the police were simply confirming that Woodlock had nothing to do with this case, the only explanation for the police having shown Woodlock's photo to the barmaids at the Prince's Lounge that does not defy common sense, and surely, in Justice Breyer's phrase, the "most natural" explanation, is that Jackson told the police that Woodlock was involved in *that* crime. Any conclusion to the contrary is "an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

Our conclusion is consistent with our duty to defer to the state court's decision. While AEDPA emphasizes deference to the state court's findings, it has not eliminated federal habeas review, much less called upon us to deny relief. We have carefully examined the state court record and have found the court's judgment regarding the meaning of the Police Activity Sheet to be objectively unreasonable. We have not, as our colleague in dissent suggests, "fail[ed] to grapple with the question of whether fairminded jurists could disagree" over the meaning of the report. *Post*, at 5 (opinion of Hardiman, J.) (citing *Harrington*, 131 S. Ct. at 786). Rather, we have exercised our power of review fully cognizant of the deference we owe to the state court, but, for the reasons noted above, have concluded that fairminded jurists simply could not conclude that the notations in the Police Activity Sheet are ambiguous.[4]

We further hold that, to the extent the state court determined that the Police Activity Sheet was not exculpatory or impeaching under *Brady* because it was

---

[4] As the dissent correctly notes, a determination that the state court unreasonably found the facts does not alone provide a basis for habeas relief. *See Wilson v. Corcoran*, 131 S. Ct. 13, 16-17 (2010) (per curiam). Rather, a federal court must—as we proceed to do

13

ambiguous, such determination was an unreasonable application of clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)(1). It is well established that the state violates a defendant's right to due process under *Brady* when it withholds evidence that is "favorable to the defense" (and material to the defendant's guilt or punishment). *Smith v. Cain*, --- U.S. ----, 132 S. Ct. 627, 630 (2012). In describing evidence that falls within the *Brady* rule, the Supreme Court has made clear that impeachment evidence is "favorable to the defense" even if the jury might not afford it significant weight. For example, in *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court noted that because certain undisclosed evidence had "*some value* as exculpation and impeachment," it should be considered in conjunction with the other undisclosed evidence in determining whether *Brady's* materiality standard is satisfied. *Id.* at 450 (emphasis added). The Court specifically rejected the state's argument that the evidence was "neither impeachment nor exculpatory evidence" because the jury might not have substantially credited it; according to the Court, "[s]uch argument . . . confuses the weight of the evidence with its favorable tendency." *Id.* at 451; *see also United States v. Bagley*, 473 U.S. 667, 676 (1985) ("[Impeachment] evidence is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.") (citation omitted).

There can be no doubt that the Police Activity Sheet had value as impeachment evidence and was favorable to Lambert. Had the report been made available to Lambert

---

below—also find that the prisoner's custody violates federal law. *See id.* at 17.

14

at trial, he could have used it to further undermine Jackson's already shaky credibility and bolster his argument that Jackson had invented a third perpetrator in order to minimize his own level of involvement in the crime. Under these circumstances, the state court's determination that the Police Activity Sheet did not satisfy the favorability prong of the *Brady* doctrine was unreasonable. *See* 28 U.S.C. § 2254(d)(1).

When this matter was last before us, we held that the state court's determination that the undisclosed Police Activity Sheet did not satisfy *Brady*'s materiality standard was unreasonable as well. We rejected the state court's reasoning that the report was not material because it was merely cumulative to other evidence that was used to impeach Jackson at trial. We explained that, had the defense introduced the report at trial, it would have opened an entirely new line of impeachment by undermining Jackson's consistency in naming Reese and Lambert as the perpetrators; as we stated then, "the withheld information provided a *unique* basis on which to impeach—specifically, a basis that shredded Jackson's credibility on the one point on which the jury could have inferred that he had any credibility." *Lambert VI*, 633 F.3d at 134 n.3; *accord Smith*, 132 S. Ct. at 630 (holding that the undisclosed statements of an eyewitness were "plainly material" where the eyewitness's testimony was the only evidence linking the defendant to the crime and his undisclosed statement directly contradicted his trial testimony); *Banks v. Dretke*, 540 U.S. 668, 702 (2004) (rejecting the state's argument that no *Brady* violation had occurred because the witness was heavily impeached at trial, and thus that his status as a paid informant would have been merely cumulative impeachment evidence); *Slutzker*

15

*v. Johnson*, 393 F.3d 373, 387 (3d Cir. 2004) (holding that, although the defendant was able to impeach the prosecution in certain respects, the suppressed information was material under *Brady* because there was a significant difference between the suppressed material and the information to which the defense had access).

We remain convinced that there is "a reasonable probability that, had the [Police Activity Sheet] been disclosed to the defense, the result of the proceeding would have been different."[5] *Bagley*, 473 U.S. at 682. In considering the materiality of suppressed evidence, the Supreme Court instructs us to ask "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. Given the weakness of the Commonwealth's case against Lambert, and its emphasis at trial on Jackson's consistency in naming Lambert and Reese as the perpetrators of the crime, we are surely not confident that, had the Commonwealth disclosed the Police Activity Sheet, the jury's verdict would have been the same. The state court's conclusion to the contrary was unreasonable.

## IV. *Conclusion*

The judgment of the District Court is vacated, and this matter remanded. The District Court is directed to conditionally grant the petition for a writ of habeas corpus. The Commonwealth shall retry Lambert within 120 days. If it fails to do so, Lambert

---

[5] The dissent submits that our argument as to how the state court unreasonably applied *Brady* is "vitiated by the Supreme Court's opinion . . . ." *Post*, at 6 (opinion of Hardiman, J.). To the contrary, and as we previously noted, the Supreme Court took no

16

shall be released.

---

issue with our prior opinion's holding.

*Lambert v. Beard, et al.*, No. 07-9005
HARDIMAN, *Circuit Judge*, dissenting.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a writ of habeas corpus to a state prisoner unless the state court's adjudication of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Because James Lambert cannot surmount AEDPA's formidable bar to habeas relief, I respectfully dissent.

I

At the core of this case is the Pennsylvania Supreme Court's ruling that the reference to Lawrence Woodlock in the police activity sheet was ambiguous such that it would be speculative to connect him to the Prince's Lounge robbery.[1] *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1198–99 (2012) (*Lambert VII*); *Commonwealth v. Lambert*, 884 A.2d 848, 855–56 (Pa. 2005) (*Lambert III*). The majority holds that the state court ruling was both an unreasonable determination of the facts and an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963). Although I agree with my

---

[1] Although our prior opinion recognized only one ground of decision in the Pennsylvania Supreme Court, namely, that the police activity sheet was merely cumulative impeachment evidence and therefore not material under *Brady*, *see Lambert v. Beard*, 633 F.3d 126, 132 (3d Cir. 2011) (*Lambert VI*), we are bound by the United States Supreme Court's interpretation of the Pennsylvania Supreme Court's decision, which recognized this alternative ruling.

1

colleagues that the best reading of the activity sheet is that it is not ambiguous or speculative, I cannot say that the state court's ruling was unreasonable under the highly deferential AEDPA standard.

## II

Pursuant to AEDPA, before a federal court may grant habeas relief under the unreasonableness grounds of 28 U.S.C. § 2254(d)(1)-(2), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). "If this standard is difficult to meet, that is because it was meant to be. . . . Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979) (Stevens, J., concurring in judgment)). "The reasons for this approach are familiar. 'Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.'" *Id.* at 787 (quoting *Calderon v. Thompson*, 523 U.S. 538, 555–56 (1998)). Accordingly, § 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther." *Id.* at 786.

Our analysis under AEDPA follows a prescribed path. *See Eley v. Erickson*, 712 F.3d 837, 846–47 (3d Cir. 2013). First we "must determine what arguments or theories

2

supported or . . . could have supported[] the state court's decision." *Harrington*, 131 S. Ct. at 786. Then we "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Only if the petitioner demonstrates that the state court decision was error "beyond any possibility for fairminded disagreement" may we grant habeas relief. *Id.* at 787.

## III

As the Supreme Court observed in its opinion remanding this case, there are several reasons why the Pennsylvania Supreme Court's decision "may well be reasonable":

> (1) [T]he activity sheet did not explicitly link Woodlock to the Prince's Lounge robbery, (2) Jackson had committed a dozen other such robberies, (3) Jackson was being held on several charges when the activity sheet was prepared, (4) Woodlock's name appeared nowhere else in the Prince's Lounge files, and (5) the two witnesses from the Prince's Lounge robbery who were shown Woodlock's photo did *not* identify him as involved in that crime.

*Lambert VII*, 132 S. Ct. at 1199. Unsurprisingly, the Commonwealth relies on these reasons in its briefing on remand.

Lambert cites various reasons why the Pennsylvania Supreme Court's interpretation of the activity sheet was unreasonable, focusing on the numerous identifying factors on the activity sheet that tie the document to the Prince's Lounge robbery. He notes that the activity sheet is marked with the police case numbers for the Prince's Lounge robbery and that it bears the names of the murder victims, the witnesses to the murder, and the law enforcement officers involved in the investigation. Moreover,

3

there is no evidence that Woodlock was ever investigated for another robbery or that his photo was shown to a witness to any other robbery. The majority adopts Lambert's interpretation of the activity sheet, citing these same factors.

If we exercised de novo review of the state court decision, it would seem that the best reading of the activity sheet is that it relates to the Prince's Lounge robbery. But under AEDPA's highly deferential standard of review, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786 (citation omitted). Instead, the state court's decision "must be objectively unreasonable," *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citation omitted), such that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents," *Harrington*, 131 S. Ct. at 786.

Here, the reasons cited by the Supreme Court and repeated by the Commonwealth on remand lead me to conclude that Lambert cannot satisfy the AEDPA standard. They provide enough support for the proposition that the reference to Woodlock is ambiguous and the connection between the activity sheet and the Prince's Lounge robbery is speculative. Though this may not be the most natural reading of the document, fairminded jurists could disagree. A determination of ambiguity is necessarily a general inquiry, and factors exist on both sides of the question presented in this appeal. Where these circumstances exist, so long as there is the possibility of fairminded disagreement over the state court interpretation, federal habeas relief is precluded by AEDPA. *Cf. Yarborough v. Alvarado*, 541 U.S. 652, 664–65 (2004) (factors pointing in opposite

4

directions regarding whether the petitioner was in custody for *Miranda* purposes precluded habeas relief so long as the state court decision was "within the matrix" of the custody test).

The majority fails to grapple with the question of whether fairminded jurists could disagree over whether the notations in the activity sheet were ambiguous and the sheet's connection to the robbery was speculative, in contravention of the process the Supreme Court has prescribed. *See Harrington*, 131 S. Ct. at 786. Although the majority asserts that the "only plausible" interpretation of the activity sheet is that it unambiguously relates to the Prince's Lounge Robbery, *see* Maj. Typescript at 13, in fact the Supreme Court offered five possible grounds for a finding of ambiguity, rendering the state court's opposite interpretation a reasonable one:

> (1) [T]he activity sheet did not explicitly link Woodlock to the Prince's Lounge robbery, (2) Jackson had committed a dozen other such robberies, (3) Jackson was being held on several charges when the activity sheet was prepared, (4) Woodlock's name appeared nowhere else in the Prince's Lounge files, and (5) the two witnesses from the Prince's Lounge robbery who were shown Woodlock's photo did *not* identify him as involved in that crime.

*Lambert VII*, 132 S. Ct. at 1199.

Given the reasonableness of the state court ruling that the activity sheet was ambiguous and its connection to the Prince's Lounge robbery was speculative, I must also dissent from the majority's additional holding that the state court's application of *Brady* was unreasonable. The Pennsylvania Supreme Court found that the activity sheet did not satisfy *Brady*'s materiality prong because there was no reasonable probability that the result of the proceedings would have been different had it been disclosed. *Lambert*

5

*III*, 884 A.2d at 473. This conclusion is not unreasonable under AEDPA. The ambiguity of the activity sheet combined with the multiple interpretations to which it is susceptible, as noted by the state court, prevents us from saying that the state court's is objectively unreasonable such that "there is no possibility that fairminded jurists could disagree." *Harrington*, 131 S. Ct. at 786.

The majority reaches the opposite conclusion based on its antecedent holding that the activity sheet is unambiguous. As I have explained, however, AEDPA does not allow us to come to that conclusion given the deference due to the state court. Arguments that the state court unreasonably applied *Brady* are vitiated by the Supreme Court's opinion, which adverted to a completely separate basis for the state court's decision: the document's ambiguity and its speculative relationship to the Prince's Lounge robbery. *See Lambert VII*, 132 S. Ct. at 1198 & n.*. It is that separate basis that we must find objectively unreasonable under AEDPA before we may grant habeas relief. *See id.* at 1198 ("If the conclusion in the state courts about the content of the document was reasonable—not necessarily correct, but reasonable—whatever those courts had to say about cumulative impeachment evidence would be beside the point.").

The Supreme Court has been clear that AEDPA "'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Renico*, 130 S. Ct. at 1862)). The Court has repeatedly reminded the lower federal courts that AEDPA precludes relief unless the state court's ruling was error

6

"beyond any *possibility* for fairminded disagreement."[2] *Harrington*, 131 S. Ct. at 787 (emphasis added). Under the appropriate standard of review, I would hold that the state court's rulings both with respect to the ambiguity of the activity sheet and the application of *Brady* were reasonable. Accordingly, I respectfully dissent.

---

[2] The Supreme Court has frequently reversed or vacated lower court decisions for failing to apply the correct standard. *See Garrus v. Sec'y of Pa. Dep't of Corrs.*, 694 F.3d 394, 412–14 & nn.1–3 (3d Cir. 2012) (Hardiman, J., dissenting) (collecting cases).