J-S27040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRUCE REESE | : | |
| | : | |
| Appellant | : | No. 1253 EDA 2019 |

Appeal from the PCRA Order Entered March 28, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0803431-1983

BEFORE: SHOGAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JULY 31, 2020**

Appellant Bruce Reese appeals from the Order entered in the Court of
Common Pleas of Philadelphia County on March 28, 2019, denying his third
petition filed pursuant to the Post Conviction Relief Act (PCRA).[1]  Following a
careful review, we affirm.

On direct appeal, a panel of this Court previously summarized the
relevant facts herein as follows:

> [Appellant] was convicted of two counts of murder in the
> second degree, robbery and criminal conspiracy following a jury
> trial before Geisz, J.[1]  [A]ppellant's motions for new trial and in
> arrest of judgment were denied and he was sentenced to
> consecutive terms of life imprisonment for second degree murder
> and concurrent terms of imprisonment of ten to twenty years for

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

robbery and five to ten years for criminal conspiracy. An appeal has been taken from the judgment of sentence.

The evidence established that on the evening of September 23, 1982, [Appellant], James Lambert and Bernard Jackson decided that they would rob a bar. The three drove to the Hatfield Lounge at 57th and Hatfield Street in Philadelphia. Jackson and Lambert entered the bar, but decided it was too crowded to commit a robbery and they left. The trio then drove to Prince's Lounge at 46th and Walnut Street, Philadelphia, and Jackson went inside to see if a barmaid he knew was working that night. She was not and Jackson left. Appellant and Lambert then entered the bar while Jackson waited in the car. Appellant remained near the front door and, while holding his hand in his pocket, he motioned toward the cash register. A barmaid picked up a bag and started placing money in it. At this time James Lambert moved to the back of the bar. He pointed a gun at one of the barmaids. A patron, James Huntley, attempted to thwart the robbery as was another patron, James Graves. Both Huntley and Graves died as a result of their injuries. Immediately after shooting Lambert and [Appellant] fled the scene without taking any money with them.

On October 14, 1982, [A]ppellant's house was searched pursuant to a search warrant issues on the basis of information furnished by Bernard Jackson as well as other information that the police had. Four .38 caliber bullets were removed from [A]ppellant's home. Although [A]ppellant was a suspect in the crimes, he alluded [sic] arrest until March 26, 1983. On that date, Officer Levine was on patrol in his police car in West Philadelphia. He had in his possession a photograph of [A]ppellant who was wanted by the police in connection with the robbery and homicide at Prince's Lounge and a warrant had been issues for [A]ppellant's arrest. The police officer observed a parked vehicle in the vicinity of 59th and Baltimore Avenue in the early hours of March 26, 1983. The vehicle was occupied by a man and a woman. The officer recognized the man from the photograph as the person wanted in connection with a robbery and homicide. The officer ordered [A]ppellant out of the vehicle and had him lie down on the ground and he was handcuffed. [A]ppellant concealed his identity and told the officer that his name was Johnson. Officer Levine radioed for assistance. In the meantime, he directed the female to leave the automobile. She told the police that the name of the man who had been arrested was "Reese". After additional police arrived at the scene, the vehicle was searched and a .32 caliber pistol was located under the front passenger seat where the woman had been sitting.

- 2 -

____

[1][Appellant] was tried jointly with a co-defendant, James Lambert, who was found guilty of two charges of murder in the first degree as well as robbery and criminal conspiracy. Mr. Lambert was sentenced to death and has taken a separate appeal to the Supreme Court. A third defendant involved in the crimes, Bernard Jackson, entered a guilty plea to second degree murder, robbery and criminal conspiracy in a separate proceeding and he testified for the Commonwealth at the trial involving [Appellant] and Lambert.

*Commonwealth v. Reese*, 00737 Phila. 1986, at *1-3, 538 A.2d 943 (Pa.Super. 1987) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on October 4, 1988. *Commonwealth v. Reese*, 520 Pa. 582, 549 A.2d 915 (1988) (Table).

On July 12, 1991, Appellant filed his first PCRA petition *pro se*. Counsel was appointed, and following an evidentiary hearing held on July 2, 1992, the PCRA court dismissed the petition on May 5, 1995. Both this Court and the Pennsylvania Supreme Court affirmed the dismissal. Appellant filed a second PCRA petition on February 22, 1999, which was dismissed as meritless, and this Court affirmed the PCRA court on appeal.

On April 11, 2011, Appellant filed the instant PCRA petition, his third, *pro se*. Counsel was appointed and filed an amended petition on October 18, 2017. Therein, Appellant asserts he is entitled to relief pursuant to the newly discovered facts exception to the PCRA time bar. 42 Pa.C.S.A. § 9545 (b)(1)(ii). Specifically, Appellant avers that he "was denied a fair trial, and

Due Process of Law, when the prosecution failed to receive extensive *Brady*[2] material concerning the main prosecution witness, Bernard Jackson. This evidence was not previously available to petitioner, and he had filed this petition within sixty (60) days of its discovery." **See** Petition for Post-Conviction Relief Pursuant to 42 Pa.C.S.A. § 9543 and Petition for New Trial Based upon After-Discovered Evidence," filed April 11, 2011, at 2 ¶ 10a.[3] In the amended petition filed on October 18, 2017, Appellant again claimed the Commonwealth had violated his constitutional rights by failing to disclose certain exculpatory evidence and misrepresenting the agreement it had reached with Jackson.

On February 26, 2019, the PCRA court provided Appellant with Notice pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure wherein

_____

[2] **Brady v. Maryland**, 383 U.S. 83, 86-89 (1963) held that a prosecution's withholding of information or evidence that is favorable to a criminal defendant's case violates the defendant's due-process rights and, therefore, the prosecution has a duty to disclose such information or evidence.

[3] Appellant filed his *pro se* and Amended PCRA Petition at issue herein light of the "new facts" obtained by Lambert's PCRA attorney. Specifically, in October of 1997 Lambert's counsel had obtained the transcripts from the June 18, 1984, plea and sentencing hearing pertaining to Jackson's unrelated, open robbery cases. Lambert's counsel also came into possession of a Police Activity Sheet which indicated that Jackson had named another individual, Lawrence Woodlock, as one of the two robbers assisted him in robbing Prince's Lounge. Appellant alleged he first learned of this evidence on March 9, 2011, when an inmate from another Pennsylvania prison mailed him a copy of the February 7, 2011, decision in **Lambert v. Beard**, 633 F.3d 126 (3d Cir. 2011). **See** Amended Petition at 19-24.

- 4 -

it indicated that his petition would be dismissed as untimely and without merit. Appellant did not file a response to the 907 Notice, and the PCRA court dismissed the instant petition on March 28, 2019.

Appellant filed a timely notice of appeal on April 22, 2019. The PCRA Court did not order, and Appellant did not file, a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b); however, the PCRA court filed an Opinion pursuant to Pa.R.A.P. 1925(a) on October 8, 2019.

In his brief, Appellant presents the following claims for this Court's review:

> I. The PCRA court erred because it used an incorrect analysis to determine if [Appellant's] PCRA petition is timely. [Appellant's] PCRA petition is timely because it's based on facts unknown to him until March 9, 2011 and he couldn't have developed these facts until March 9, 2011.
>
> II. The PCRA court erred by finding [Appellant] previously litigated his suppressed plea deal claims regarding the deal Jackson brokered with the DAO ][District Attorney's Office] that resulted in ADA Myers appearing on Jackson's behalf at his June 18, 1984 plea hearing and zealously urging Judge Halbert not to impose additional prison time for Jackson's eight unrelated robbery counts.
>
> III. The PCRA court erred when it denied [Appellant's] Brady[4] claim. U.S. Const. admts. 5, 6, 8, 14; Pa. Const. art. I, §§ 8, 9.
>
> IV. The PCRA court erred by not adjudicating [Appellant's] *Napue*[5] claim. U.S. Const. admts. 6, 8, 14; Pa. Const. art I, §§8, 9.

---

[5] In **Napue v. Illinois**, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the United States Supreme Court confirmed the principle that "a State may

Brief for Appellant at 1-2.

In support of his first two issues, Appellant urges that:

[W]hen the Third Circuit's February 7, 2011 opinion mentioned "the Commonwealth's... misrepresentation of the bargain given to its key witness," **Lambert v. Beard**, 633 F.3d at 129, Mr. Reese timely filed his PCRA petition and retained an attorney who obtained the June 18, 1984 transcripts. The transcripts contained a wealth of material facts not disclosed to [Appellant's] jury regarding how far the DAO would go to ensure Jackson received no additional prison time for the eight robbery counts addressed at the hearing. The transcript plainly contradicts ADA Gordon's and ADA Myers's testimony and statements at [Appellant's] trial where both told jurors the DAO had no intention of doing anything for Jackson regarding his open robbery counts and that Jackson was very likely going to serve a lengthy prison sentence - consecutive to his Prince's Lounge prison sentence - for his open robbery counts.

\*\*\*

*Burton*[6] is also applicable. The Woodlock Activity Sheet and the June 18, 1984 transcripts have been mentioned in publicly available legal pleadings since 1998. [Appellant] however, has been without counsel and incarcerated since 1995. Consequently, despite the fact Lambert's pleadings were publicly available, the public record presumption doesn't apply because of [Appellant's] *pro se* status and incarceration. *Burton* is also applicable because § 9545(b)(1)(ii) is subjective, meaning the new facts must have been unknown to the petitioner. Here, the facts contained in the Woodlock Activity Sheet and the June 18, 1984 transcripts only became known to Mr. Reese on March 9, 2011 - a little over a

---

not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." **Id**. at 269, 79 S.Ct. at 1177.

6 This reference is to **Commonwealth v. Burton**, 158 A.3d 618 (Pa. 2017). Appellant's argument to the contrary, **Burton** holds only that material in the public record is not presumptively known to an incarcerated *pro se* PCRA petitioner just because that information is publicly available; therefore, it does not follow from **Burton** that Appellant is relieved of his duty to seek out facts as a matter of due diligence.

> month after the Third Circuit's February 7, 2011 opinion. Once he learned of these new facts, Mr. Reese timely filed his PCRA petition on April 11, 2011.

Brief for Appellant at 44-45 (footnote omitted).   Appellant goes on to state that in light of the foregoing, this claim has not been previously litigated, for these new facts distinguish the instant plea deal claim from that which he raised in 1991.  *Id*. at 46. [7]

When reviewing the propriety of an order denying PCRA relief, this Court considers the record "in the light most favorable to the prevailing party at the PCRA level." ***Commonwealth v. Stultz***, 114 A.3d 865, 872 (Pa.Super. 2015) quoting ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*).  We are limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Robinson***, 139 A.3d 178, 185 (Pa. 2016). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa.Super. 2014).

---

[7] The Commonwealth's brief initially was due on March 23, 2020.  After filing two last-minute applications for an extension of time in which to file its brief, the Commonwealth was granted until July 3, 2020, to do so; in our June 23, 2020, Order granting the second extension, we noted our disapproval of the Commonwealth's late filing of its request. Notwithstanding, on July 1, 2020, the Commonwealth filed a third request for an extension of time in which to file its brief, which we denied.  The Commonwealth has not filed an appellate brief.

A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). This time requirement is mandatory and jurisdictional in nature, and the PCRA court may not ignore it in order to reach the merits of the petition. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa.Super. 2013). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). However, a court may review an untimely petition when it alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii), is met.[8]   A petition invoking one of these exceptions must be filed within

---

[8] The exceptions to the timeliness requirement are:

> (i)      the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

one year of the date the claim could first have been presented. 42 Pa.C.S. § 9545(b)(2).[9]

Herein, it is undisputed that Appellant's judgment of sentence became final over twenty-two years before he filed his *pro se* PCRA petition on April 11, 2011. In finding Appellant's petition to be untimely, the PCRA court concluded, without explanation, that the Woodlock Police Activity Sheet and the Jackson's undisclosed plea deal would have been used solely to impeach Jackson's testimony at Appellant's and Lambert's joint trial; therefore, the court reasoned Appellant is not entitled to relief on this claim. Trial Court Opinion, field 10/8/19, at 6. We disagree.

This Court has stated the following when outlining the exception under Section 9545(b)(1)(ii):

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced.

_____

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

[9] Until recently, a petition invoking an exception was required to be filed within sixty days of the date the claim could have been presented. However, 42 Pa.C.S.A. § 9545(b)(2) has been amended to allow petitioners one year to present claims.

Additionally, the focus of this exception "is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts."

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa.Super. 2015) (internal citations omitted).

In addition, the Pennsylvania Supreme Court has held that when considering a claim seeking to invoke the newly discovered facts exception, "the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." ***Commonwealth v. Cox***, 146 A.3d 221 (Pa. 2016) (citation omitted). Based upon our review of the record, we find Appellant has demonstrated the newly discovered facts exception to the PCRA jurisdiction time-bar.

In ***Lambert v. Beard***, 633 F.3d 126 (3d Cir. 2011), *cert. granted, judgment vacated sub nom.* ***Wetzel v. Lambert***, 565 U.S. 520, 132 S. Ct. 1195, 182 L. Ed. 2d 35 (2012) the Third Circuit Court of Appeals overturned Lambert's conviction and death sentence based upon the Woodlock Police Activity Log. ***Lambert*** revealed information regarding Jackson's unrelated robbery cases and the Police Activity Log. Specifically, the Court observed that:

> In the Police Activity Sheet of October 25, 1982, which first came to light during the PCRA proceedings, Jackson named Lawrence Woodlock as a "co-defendant." (A3334.) The Commonwealth conceded at oral argument before us that the Police Activity Sheet should have been disclosed to the defense prior to trial. Aside from the other arguments made as to why that Police Activity Sheet

was significant, there can be no question that given Jackson's consistent position—his *only* consistent position, by his own admission, not to mention the evidence at trial—that the only participants were Lambert and Reese in the bar and Jackson in the car, the naming of another participant could well have destroyed what little was left of his credibility.

*Id*. at 131.

Appellant, who was in prison, could not have ascertained the Third Circuit Court's analysis of this information sooner with the exercise of due diligence. As such, he could not have raised or previously litigated the specific claims he presents herein before that time. This Court's jurisdiction having been invoked, we next review the merits of Appellant's final two issues invoking **Brady** and **Napue**, **supra**.

As to **Brady** claims advanced under the PCRA, a defendant must demonstrate that the alleged **Brady** violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Cam Ly**, 980 A.2d 61, 76 (Pa. 2009) (citation and internal quotation marks omitted). "[T]o establish a **Brady** violation, an appellant must prove three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; **and** (3) prejudice ensued." **Commonwealth v. Weiss**, 81 A.3d 767, 783 (Pa. 2013) (citations omitted, emphasis added). In addition:

In ***Napue v. Illinois****,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), a prosecutor knowingly elicited false testimony that a cooperating government witness had not, in fact, been promised consideration in exchange for his testimony. Rejecting the government's argument that the defense had numerous other ways in which to impeach the witness, the Court held that it "[did] not believe that the fact that the jury was apprised of other grounds for believing that the witness ... may have had an interest in testifying against petitioner turned what was otherwise a tainted trial into a fair one." ***Id****.* at 270, 79 S.Ct. 1173.

The logic of ***Napue*** has been extended to the ***Brady*** context, both by the Supreme Court of the United States and by various federal courts of appeals. In ***Banks v. Dretke****,* 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), the Supreme Court rejected the state's argument that no ***Brady*** violation had occurred because the witness "was heavily impeached at trial" and thus that his status as a paid informant would have been "merely cumulative." ***Id****.* at 702, 124 S.Ct. 1256 (alterations omitted). Finding that no other impeachment evidence was "directly relevant" to the witness's status as an informant, the Court ruled that "one could not plausibly deny the existence of the requisite 'reasonable probability of a different result' had the suppressed information been disclosed to the defense." ***Id****.* at 702–03, 124 S.Ct. 1256. ***See also Bagley****,* 473 U.S. at 689, 105 S.Ct. 3375 ("If the testimony that might have been impeached is weak and also cumulative, corroborative, or tangential, the failure to disclose the impeachment evidence could conceivably be held harmless. But when the testimony is the start and finish of the prosecution's case, and is weak nonetheless, quite a different conclusion must necessarily be drawn."). We have also recognized that undisclosed ***Brady*** material that would have provided a different avenue of impeachment is material, even where the witness is otherwise impeached

***Lambert v. Beard***, 633 F.3d 126, 134 (3d Cir. 2011), *cert. granted*, judgment vacated sub nom. ***Wetzel v. Lambert***, 565 U.S. 520, 132 S. Ct. 1195, 182 L. Ed. 2d 35 (2012).

Appellant asserts that because the Commonwealth's case against him was "premised entirely on Jackson's credibility . . . [that] evidence would've

- 12 -

substantially impacted the jury's assessment of Jackson's credibility to [Appellant's] benefit." Brief for Appellant at 47. Appellant goes on to state that:

> The suppressed Woodlock Activity Sheet and suppressed plea deal regarding Jackson's unrelated robbery cases would've eradicated whatever credibility Jackson had left after [Appellant's] and Lambert's trial attorneys cross-examined him regarding his "devastatingly inconsistent" statements and trial testimony. Consequently, individually and collectively, the suppressed Woodlock Activity Sheet and suppressed plea deal undermine confidence in [Appellant's] convictions, *i.e.*, had jurors known the facts contained in the Woodlock Activity Sheet and the June 18, 1984, hearing, it's reasonable probable these facts would've altered at least one juror's assessment of Jackson's credibility to the point where they would've altered at least one juror's assessment of Jackson's credibility to the point where the would've reached different verdicts.

***Id***. (citation omitted).

As the PCRA court recognized, and a reading of the ***Lambert*** decision reveals, the police activity sheet and additional details pertaining to a plea deal with Jackson were not exculpatory to Appellant's case, as the evidence presented against him substantially differed from that presented against Lambert. As the Lambert Court observed:

> In closing, we cannot help but observe that the evidence is very strong that Reese, not Lambert, was the shooter, even assuming that Lambert (and not Jackson, as two of the barmaids testified) was in the Prince's Lounge that night. First, it is undisputed that the .38 was the murder weapon, that the .38 was Reese's gun and carried by him that night, and that Lambert (*if* he was there) had only the .32. Second, all three barmaids described the shooter as no more than 5'7". Reese is 5'7"; Lambert is 6' to 6'1". Third, the testimony of Janet Ryan, the barmaid who suddenly remembered Lambert as having put the gun in her face, identifying him on Reese's case only "from the

nose up" (although she told the police at the time of the murders that she "didn't even get a look at the man") after failing to identify him on the Commonwealth's case because "nobody asked me," was, in a word, bizarre. (A2824, 2844, 2940–41). These examples are precisely the types of evidence which can undermine a court's faith that the verdict in question is "worthy of confidence." *Kyles,* 514 U.S. at 434, 115 S.Ct. 1555. Finally, and for what it is worth (perhaps Jackson saw the havoc his testimony had wrought), we note the post-trial proffer of Jackson's affidavit, in which he says that Reese was the shooter and that Ryan was a friend of Reese's family and would never testify against Reese. The affidavit was rejected by the trial court as untimely and not in proper form. *See Lambert I,* 603 A.2d at 572.

***Lambert v. Beard***, 633 F.3d 126, 135–36 (3d Cir. 2011), *cert. granted, judgment vacated sub nom.* ***Wetzel v. Lambert***, 565 U.S. 520, 132 S. Ct. 1195, 182 L. Ed. 2d 35 (2012).

Whether Jackson had named Lambert or Woodlock as an accomplice would have done little to exonerate Appellant, whom Jackson consistently named as an accomplice in each statement he provided to police. In the same vein, even if it had been the case that Jackson had received a plea deal in the unrelated robbery cases which the Commonwealth inadvertently or intentionally failed to reveal at trial, Jackson's credibility had been essentially destroyed by defense counsel on cross-examination at trial. In addition, the PCRA court found no merit to Appellant's contention raised in his first PCRA petition that the Commonwealth had improperly suppressed a plea deal with Jackson. As a result, Appellant has failed to establish a violation of his constitutional rights under the ***Brady/Napue*** criteria, and, therefore, his final

two claims do not entitle him to relief.  It follows that Appellant's PCRA petition lacked merit and was properly dismissed as untimely.[10]

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/20

---

[10] **Commonwealth v. O'Drain**, 829 A.2d 316, 322, n. 7 (Pa.Super.2003) ("this [C]ourt may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm").